**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MATTHEW W. QUISENBERRY,

        Plaintiff,                         CIVIL ACTION NO. 12-13650

        vs.                                DISTRICT JUDGE BERNARD A. FRIEDMAN

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 13) be denied and Defendant's motion for summary judgment (docket no. 15) be granted.

**II.    PROCEDURAL BACKGROUND**

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on March 15, 2010, alleging disability beginning April 1, 1994. (TR 132-42). The applications were denied and Plaintiff filed a timely request for a *de novo* hearing. On October 20, 2010 Plaintiff appeared with a non-attorney representative in Livonia, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Donald G. D'Amato. (TR 43-67). Vocational Expert (VE) Diane Regan also appeared and testified at the hearing. In a January 3, 2011 decision the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act from April 1, 1994, the alleged onset of disability date, through January 3, 2011, the date of the decision. (TR 25-39). The Appeals Council declined to review the ALJ's decision and

Plaintiff filed the instant action for judicial review.

## III.   PLAINTIFF'S TESTIMONY, TESTIMONY OF PLAINTIFF'S REPRESENTATIVE, AND MEDICAL EVIDENCE

### A.   Plaintiff's Testimony

Plaintiff was twenty-three years old on the date his applications were filed and on his date last insured. (TR 37, 48). He claims disability onset at the age of seven. (TR 37). He was in special education through high school and he earned a certificate of completion. He spent two years in a post-secondary vocational and life skills training program where he practiced everyday life skills and learned budgeting, building maintenance, and plumbing. (TR 32, 48, 171, 269). He lives with his parents. (TR 52). Plaintiff testified that he has a difficult time reading. He reported that he has been depressed on and off throughout his life. (TR 52). He claims that he is unable to work because it takes him longer to learn what he has to do on the job and he has difficulty understanding what is expected of him.

### B.   Representative Testimony

Plaintiff was accompanied to the hearing by Sally Bagnall, a non-attorney representative who was employed as Plaintiff's case manager for more than four years through Community Living Services of Oakland County. (TR 45, 60). Ms. Bagnall testified that Plaintiff has difficulty seeing himself realistically and he misunderstands what is expected of him in different situations. She testified that he has difficulty setting goals. She also gave anecdotal testimony that Plaintiff exercised poor judgment when he spent his tax refund money on a new computer for which he had no internet access when instead he should have saved the money for emergency car repairs. (TR 63, 246). She testified that he has difficulty remembering detailed instructions and once ran up cell phone charges of $630 for internet usage when he was instructed to use the phone for emergency

2

purposes only. (TR 64).

### C.     Medical Evidence

The undersigned has thoroughly reviewed the medical evidence and will cite to and discuss relevant reports contained in the record as necessary in response to the parties' arguments.

## IV.     VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff worked in the past as a cleaner at the unskilled, light exertional level. (TR 58). The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience who has the following limitations: (a) requires simple, unskilled, non-production oriented work with one, two, or three step instructions, (b) occasionally in close proximity to coworkers and supervisors, (c) cannot function as a member of a team, and (d) occasionally in direct contact with the public in a low-stress environment, defined as having only occasional changes in the work setting. The VE testified that the individual could perform Plaintiff's past work as a cleaner, along with light, unskilled work as a packer, sorter, and small products assembler, comprising 18,000 jobs. (TR 58). She further testified that if the individual required less than occasional contact with the public he would not be able to perform Plaintiff's past relevant work as a cleaner but he could perform the other listed positions. (TR 65-66).

Next, the ALJ added to the first hypothetical the limitations that the individual requires work which, in addition to regularly scheduled breaks, will allow him to be off task at least one hour per eight hour workday due to symptoms from his impairments. The VE testified that there were no jobs available for an individual with these limitations. (TR 58-59). The VE also testified that no jobs were available for an individual who, in addition to the limitations listed in the first hypothetical,

3

also required work that would allow him to miss two work days per month due to symptoms from his impairments. (TR 59).

## V.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2010. (TR 27). He found that Plaintiff's work as a janitor or cleaner rose to the level of substantial gainful activity, yet he continued with the sequential analysis because he found that Plaintiff spent a relatively short amount of time working at substantial gainful activity levels. (TR 27-28). The ALJ found that while Plaintiff suffered from the severe impairments of cognitive disorder not otherwise specified (NOS), reading and mathematics disorders, disorder of written expression, depressive disorder NOS, and history of migraines, he did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 28-31).

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: (a) requires work that is non-production oriented, simple, unskilled, with one, two, or three step instructions, (b) can only occasionally be in close proximity to coworkers and supervisors, (c) cannot function as a member of a team, (d) can only occasionally be in direct contact with the public, and (e) must work in a low stress environment, defined as having only occasional changes in the work setting. (TR 31-37). The ALJ concluded that Plaintiff was capable of performing his past relevant work as a cleaner. In the alternative, the ALJ found that Plaintiff was capable of performing other jobs that existed in significant numbers in the national economy. (TR 37-38). Consequently the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from April 1, 1994, the alleged onset of disability, through January 3, 2011, the date of the ALJ's

decision.

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

5

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

**C.      Analysis**

Plaintiff argues that the ALJ erred in his step one substantial gainful activity analysis and set forth an RFC determination that is not supported by substantial evidence in the record.

*1.      Substantial Gainful Activity*

At step one of the five step sequential analysis the ALJ found that Plaintiff engaged in substantial gainful activity since April 1, 1994. (TR 28-29). He based this conclusion on Plaintiff's 2008 earnings records which showed that Plaintiff's cleaner position exceeded the earnings threshold established by the Social Security Administration and thus constituted substantial gainful activity. Despite this finding, the ALJ determined that Plaintiff spent a relatively short work history at substantial gainful activity levels and so he continued with the sequential analysis.

Plaintiff argues that the ALJ's substantial gainful activity analysis is not adequate for judicial

review. She speculates that the ALJ may have continued the analysis past step one because he was unsure whether Plaintiff was capable of performing ongoing substantial gainful activity. She also speculates that the ALJ continued his analysis because he found that Plaintiff did not have an opportunity to learn the cleaner position during the short amount of time in which it was performed. She argues that the cleaner job does not constitute substantial gainful activity because it was performed under special circumstances. She also argues that this matter should be remanded for further consideration because the ALJ's step one determination is unclear and because the ALJ ultimately relied on his step one determination to deny benefits, finding that Plaintiff could perform his past relevant work as a cleaner.

The claimant is required to show at step one of the sequential analysis that he is not currently engaged in substantial gainful activity. If the claimant is working at a substantial gainful activity level the ALJ will deny benefits without further analysis, regardless of the claimant's age, education, work experience, or medical condition. 20 C.F.R. §§ 404.1520(b), 416.920(b). Indeed, the Sixth Circuit has held that the regulations preclude an award of disability benefits if the claimant has engaged in substantial gainful activity. *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1029 (6th Cir. 1990).

The regulations define substantial gainful activity as work that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. *See also Skafica v. Sec'y of Health & Human Servs.*, 918 F.2d 179, at *1 (6th Cir. 1990). Substantial work activity is defined as work that involves "doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). Gainful work is defined as "work activity that [the claimant does] for pay or profit." 20 C.F.R. §§ 404.1572(b), 416.972(a). *See also* 20 C.F.R. §§ 404.1510, 416.910. As a general rule, the Commissioner's

fundamental consideration when evaluating whether work constitutes substantial gainful activity is the amount of earnings derived from the work performed. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). The Commissioner has determined that earnings of at least $940.00 per month for the year 2008 constitute substantial gainful activity.[1] The earnings guideline of $940 is merely a presumptive level, however, and will not preclude a finding of disability if the claimant presents sufficient evidence to rebut the presumption of substantial gainful activity. *Skafica*, 918 F.2d 179, at *2.

The ALJ may find that the claimant did not perform substantial gainful activity if the work activity was performed under special circumstances, meaning that it was performed in a way that took into account the claimant's limitations. 20 C.F.R. §§ 404.1573(c), 416.973(c). The following are examples of special conditions that may relate to the claimant's impairment:

> (1) the claimant required and received special assistance from other employees in performing the work;
> (2) the claimant was permitted to work irregular hours or take frequent rest periods;
> (3) the claimant was provided with special equipment or assigned to work especially suited to his impairment;
> (4) the claimant was able to work only because of specially arranged circumstances, for example, other persons helped [the claimant] prepare for or get to and from ... work;
> (5) the claimant was permitted to work at a lower standard of productivity or efficiency than other employees; or
> (6) the claimant was given the opportunity to work despite his impairment because of family relationship, past association with the employer, or the employer's concern for the claimant's welfare.

20 C.F.R. §§ 404.1573(c)(1)-(6), 416.973(c)(1)-(6).

In this case, earnings records reveal that Plaintiff earned $5,877.81 from work performed in

---

[1] The monthly substantial gainful activity amounts by disability type can be found at http://www.ssa.gov/oact/cola/sga.html.

2008 for Grand Rapids Building Services, Inc. (TR 145, 154). The record shows that he performed janitorial/cleaning services for this company for six months in 2008, averaging $979.64 per month, an amount that exceeds the wage threshold set forth in the guidelines. (TR 157). The ALJ reasonably concluded based on the earnings records that Plaintiff engaged in substantial gainful activity. Consequently, the sequential analysis should have ended at step one with a denial of disability benefits unless Plaintiff rebutted the substantial gainful activity presumption. Despite his conclusion, the ALJ opted to continue the analysis after stating that the overall amount of time Plaintiff spent in substantial gainful activity was short. The ALJ did not make any clear determination that Plaintiff rebutted the presumption so as to preclude an immediate denial of his benefits.

The undersigned is persuaded by Plaintiff's argument that the ALJ's substantial gainful activity analysis is unclear. If the ALJ found, as he states, that Plaintiff engaged in substantial gainful activity his analysis should have ended immediately with a finding that Plaintiff was ineligible for disability benefits. The fact that the analysis did not end raises questions as to why. Nevertheless, it is the undersigned's opinion that any step one error that occurred is harmless. The ALJ continued the sequential analysis and found that Plaintiff was not entitled to disability benefits because he remained capable with his limitations of performing past relevant work as a cleaner. In addition, the ALJ also found that Plaintiff remained capable of performing a substantial number of other jobs that existed in the national economy. The ALJ based his conclusion on VE testimony which stated that there were a sufficient number of available jobs in the national economy that Plaintiff could perform with his limitations. The ALJ's determination is supported by substantial evidence and remand is not warranted for clarification of the step one analysis.

9

*2.     Evaluation of Medical Evidence and the RFC Determination*

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. She argues that the ALJ gave great weight to Dr. Herringshaw's opinions but rejected her opinion that Plaintiff's low academic skills would pose severe difficulties in most work settings. She claims that if Dr. Herringshaw's opinions are the most reliable and are supported by other medical opinions of record, her statement of Plaintiff's severe difficulties with work should be given considerable, if not controlling, weight. She also claims that the RFC assessment does not properly account for Plaintiff's borderline intellectual functioning, his mental impairment and retardation, or his depressive symptoms and the impact those symptoms have upon his motivation and work behavior.

The Commissioner has imposed "certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted). One such standard is that the ALJ must "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] [medical] opinion." *Id.* (citation and internal quotation marks omitted). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the ... medical opinion and the reasons for that weight.' " *Id.* (citation omitted). An opinion that a claimant is disabled is not a medical opinion and is therefore not entitled to any significant weight. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). When determining the RFC, the ALJ must review all of the relevant evidence and consider each of the claimant's medically determinable impairments whether or not severe. 20

C.F.R. §§ 404.1545(a)(1), (2), 416.945(a)(1), (2). The RFC is an assessment of the claimant's remaining capacity for work after his limitations have been taken into account. *Howard v. Comm'r*, 276 F.3d 235, 239 (6th Cir. 2002). It is considered the most, not the least, the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a).

Dr. Herringshaw first saw Plaintiff in August 2006 for the purpose of conducting a psychological evaluation in order to obtain an assessment of Plaintiff's current intellectual, academic, adaptive and behavioral functioning. (TR 220-24). The doctor had Plaintiff complete a series of standardized intelligence tests which showed that his overall level of intellectual functioning fell within the borderline range. Plaintiff's working memory index fell within the mild range of mental retardation. His long and short term memory skills and general fund of knowledge, and his ability to perform mental arithmetic operations all fell within the borderline range. In math computation, spelling, sentence comprehension and word reading Plaintiff scored within the mild range of mental retardation. He was able to solve simple one, two and three digit addition and subtraction problems and very simple multiplication and division problems. The doctor diagnosed Plaintiff with reading disorder, mathematics disorder, disorder of written expression, rule out attention deficit hyperactivity disorder, and assigned a GAF of 55. She opined that Plaintiff's strength was in performance skills but opined that Plaintiff was unable to work due to severe learning disabilities.

Dr. Herringshaw conducted a second similar consultative psychological evaluation in November 2010. (TR 254-60). The doctor observed that Plaintiff's perceptions of others was not always accurate and he was highly sensitive to perceived criticism. She noted that Plaintiff followed all directions, completed all tasks, and he was highly persistent when attempting to complete tasks.

11

Once again the doctor administered a battery of psychological tests. (TR 255-58). The results from these tests showed that Plaintiff's intellectual functioning fell at the high end of the mild range of mental retardation. Individual subtest scaled scores on the Wechsler Adult Intelligence Scale IV fell within a range from average to mentally impaired. Plaintiff's long term memory skills and general fund of information fell within a borderline range. His ability to perform mental arithmetic operations within a time limit fell within a mentally impaired range. Results on the Wide Range Achievement Test - 4 verified that Plaintiff has a reading disability above and beyond his low cognitive functioning. He was able to solve single digit subtraction problems but not more complex multiplication and division problems. She found that Plaintiff has variable symptoms of depression ranging from mild to moderate which impact his motivation and work behavior. The doctor diagnosed Plaintiff with cognitive disorder NOS, reading disorder, depressive disorder NOS, and assigned a GAF of 58. (TR 259). She concluded that Plaintiff would be able to understand, retain, and follow simple instructions and he would generally be restricted to performing simple, routine, repetitive, concrete, tangible tasks. She found that all of Plaintiff's academic skills fell within the mild range of mental retardation and opined that Plaintiff's low academic skills would pose severe difficulties in most work settings.

The ALJ assigned significant weight to the GAF score of 55 found by Dr. Herringshaw in 2006, concluding that the score was consistent with other medical evidence and with Dr. Herringshaw's own clinical examination and evidence suggesting that Plaintiff has only moderate limitations. (TR 35). He assigned great weight to the 2010 opinion of Dr. Herringshaw after finding that it was supported by her findings and clinical observations following a thorough examination. Finally, he attributed little weight to Dr. Herringshaw's assessment that Plaintiff was unable to work

due to severe learning disabilities because it constituted an opinion on an issue reserved to the Commissioner and it conflicted with Dr. Herringshaw's GAF scores and her finding that Plaintiff is able to perform unskilled work.

Plaintiff argues that the ALJ erred by discounting Dr. Herringshaw's 2006 opinion that he was not able to work because of his severe learning disabilities. She also argues that the ALJ's RFC does not accurately account for Dr. Herringshaw's opinion that Plaintiff's low academic skills would pose severe difficulties in most work settings, or that he was mildly mentally retarded, had a reading disability above and beyond his cognitive limitations, and had depressive symptoms that would impact upon his motivation and work behavior.

Having fully considered the arguments and evidence of record, the undersigned finds that the ALJ did not err in his treatment of the medical evidence or in his RFC determination. The ALJ was clear in the weight he assigned to the medical opinions and he gave good reasons for his decisions. He reasonably concluded that Dr. Herringshaw's opinion that Plaintiff would be unable to work due to severe learning disabilities was entitled to only very limited weight, in part because it was inconsistent with the doctor's own findings that Plaintiff was able to perform simple, routine, repetitive, concrete, tangible work tasks. The ALJ also reasonably discounted this opinion because it addressed an issue reserved to the Commissioner. The undersigned further concludes that the ALJ properly considered and gave good reasons for the weight he assigned to the opinions of Dr. Farooq and the GAF score assessed by Ms. Taylor.

The ALJ's RFC accounts for Plaintiff's credible limitations and imposes multiple psychological based restrictions on his ability to work. The RFC accounts for the limitations caused by Plaintiff's depression by limiting him to low stress jobs that require no more than occasional

13

changes in the work setting, no production work, and by limiting him to jobs that require only occasional close proximity to coworkers, supervisors, and the public and no positions that require work as a team. The RFC further accounts for Plaintiff's cognitive impairment and learning disability by limiting him to jobs that do not require complex written or verbal instruction, but rather require simple, unskilled, non-production work with only one, two, or three step instructions. The RFC and disability determination are supported by substantial evidence and should not be disturbed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court

determines that any objections are without merit, it may rule without awaiting the response.


Dated: July 24, 2013           s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 24, 2013           s/ Lisa C. Bartlett
                               Case Manager

15